IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTOINETTE MARIE HARRIS, | |
| Plaintiff, | 4:15-CV-3025 |
| vs. | MEMORANDUM AND ORDER |
| WINDHAM PROFESSIONALS, A New Hampshire Company, et al., | |
| Defendants. | |

    Antoinette Marie Harris appeals from the final judgment of the bankruptcy court that her student loans held by Educational Credit Management Corporation (ECMC) are not dischargeable. Harris filed a voluntary petition for Chapter 7 bankruptcy in October 2013 and received her discharge in January 2014. She filed this adversary proceeding to have her student loan obligations discharged for undue hardship pursuant to 11 U.S.C. § 523(a)(8). The bankruptcy court found there was no undue hardship and entered judgment against her. Harris appeals. ECMC timely elected to have the appeal heard in district court. Filing 2. The Court will affirm the bankruptcy court's judgment.

BACKGROUND

    The facts of Harris' employment and payment history are largely undisputed. In October 1996, Harris obtained a student loan of $10,804.20 to complete her bachelor's degree, which was awarded in 1997. The first year for which wage information is available in the record is 2004, when she was earning a $37,920 salary. By 2009, Harris was earning over $55,000 as a marketing specialist at the University of Nebraska Medical Center (UNMC). She lost that position in 2010 due to a reduction in force and was briefly unemployed, but accepted a temporary position with UNMC in 2011 and then accepted her current position as residency program coordinator for the plastic surgery department. Filing 1-2 at 2. At the time of trial, Harris' gross income

was $38,342.20 per year, and the bankruptcy court found her net monthly income to be $2,101.84.[1] Filing 1-2 at 3.

During the approximately 10 years between the date of the loan and September 2006, Harris made only three payments totaling $397.81. Harris asked for and received three deferments and eleven forbearances of repayment. Due to capitalization, the outstanding balance of the loan was approaching $23,000 in 2006. Filing 1-2 at 2.

In 2007, Harris began a graduated repayment plan and started making payments of $160 per month. A graduated repayment plan involves low initial payments that increase over time. And over the next 3 years, Harris paid about $6,000. But many of those payments were late, so some of the money went to late fees, and she made little progress at reducing the loan principal. Then, beginning in late 2009, Harris' payments became even more erratic, and she began missing payments. Harris' lender made a claim with the loan's guarantor, the National Student Loan Program (NSLP), adding collection costs to the debt. NSLP paid the original lender and began garnishing Harris' paychecks. The garnishment stopped when Harris began making voluntary payments of $250 per month. NSLP collected $5,619.66 from garnishment and $2,000 in voluntary payments, but most of that amount went toward interest and collection costs; only $511.96 was applied to principal. Filing 1-2 at 2.

Harris filed a voluntary Chapter 7 bankruptcy petition in 2013 (case no. BK13-41856) and received her Chapter 7 discharge on January 28, 2014. She filed this adversary proceeding (case no. A14-4001) on January 10, 2014 seeking to discharge her student loan debt. After the adversary proceeding was filed, NSLP transferred the loan to ECMC, which provides guaranty services for the Department of Education. Filing 1-2 at 3. At the time of the transfer, the outstanding principal balance of the loan was $24,413.93, and interest of $550.78 and collection costs of $6,085.52 were unpaid. At the time of trial, the total debt was $32,643.73. Filing 1-2 at 3.

A Chapter 7 discharge does not discharge a debtor's educational debt unless excepting the debt from discharge "would impose an undue hardship on the debtor and the debtor's dependents . . . ." 11 U.S.C. § 523(a)(8). But the bankruptcy court found no undue hardship here. The bankruptcy court found that Harris' salary of about $38,000 per year "is probably on the low end of what she will reasonably expect to earn in the future." Filing 1-2 at 4. After conducting a detailed examination of Harris' expenses, the bankruptcy court

---

[1] Harris contended to the bankruptcy court that her net monthly income was $1,940.15, but the bankruptcy court found that figure to have been based on mathematical error, and Harris does not take issue with that reasoning. *See* filing 6 at 12.

found that several of Harris' expenses were temporary, and that when those expenses were no longer necessary it would "free[] up $600.00 per month in the foreseeable future." Filing 1-2 at 6. The bankruptcy court also noted Harris' eligibility for an Income Based Repayment (IBR) plan, which caps a debtor's monthly payment based on gross income and family size relative to the federal poverty guidelines, and provides for discharge of the remaining balance if the debtor makes the required payments for 25 years. Filing 1-2 at 6 (citing 34 C.F.R. § 682.215). And the bankruptcy court noted that as a public employee, Harris might also be eligible for the Public Service Loan Forgiveness Program (PSLFP), which provides for discharge of remaining debt after only 10 years. Filing 1-2 at 6 (citing 34 C.F.R. § 685.219). The bankruptcy court concluded:

> Ms. Harris is an intelligent, articulate, and hard-working individual who has been employed full time since graduating college. It is very likely that she will continue to be employed at or above her current salary for many years to come. As discussed above, her monthly net income is actually somewhat higher than she represents due to the biweekly nature of her compensation. Further, it appears that she is over-withholding for federal income taxes, perhaps as much as $100.00 per month. In addition, many of her monthly expenses are relatively short-term obligations, ranging from a few more months to a few years. Accordingly, as more fully described above, her net monthly income after expenses is more than sufficient to cover an IBR payment, whether it is $76.58 or $154.70 or more. By participating in the IBR and the PSLFP, she could discharge her student loan debt in as little as 10 years by making payments calculated according to her income, all without adverse tax consequences. In fact, had she done so prior to commencement of this adversary proceeding, she would already be more than a year into the 10-year repayment term.
>
> For the foregoing reasons, I find that Ms. Harris has not met her burden of proof for undue hardship under 11 U.S.C. § 523(a)(8), and her request for discharge of her student loan indebtedness is denied . . . .

Filing 1-2 at 7. Harris appeals.

## ISSUES ON APPEAL

On appeal, Harris raises four points of error. First, she challenges the bankruptcy court's evaluation of her past, present, and reasonably reliable future earnings, arguing that the court failed to sufficiently consider the "cyclical" nature of her employment history. Second, she challenges the bankruptcy court's conclusion that her monthly expenses will be reduced by several hundred dollars in the foreseeable future leaving her with adequate surplus income to make monthly payments. Third, she contends that the bankruptcy court failed to give proper regard to her good faith efforts to repay the loan, and erred in suggesting that she participate in an IBR plan or the PSLFP program. And fourth, she argues that the bankruptcy court erred in suggesting that loan forgiveness may be non-taxable. Filing 6 at 1.

## STANDARD OF REVIEW

The issue of dischargeability of student loans is a question of law, which the Court reviews de novo. *Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds),* 425 F.3d 526, 531 (8th Cir. 2005). Factual findings underlying that legal conclusion are reviewed for clear error. *Id.* A finding is clearly erroneous if, after examining the entire record, the Court is left with a definite and firm conviction that the bankruptcy court has made a mistake. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985).

## ANALYSIS

In an educational loan discharge case, the debtor has the burden of establishing undue hardship by a preponderance of the evidence. *In re Walker,* 650 F.3d 1227, 1230 (8th Cir. 2011). To assess whether the debtor has met this burden the Court applies a totality-of-circumstances test, considering (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the reasonable living expenses of the debtor and her dependents; and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case. *Id.* The burden is rigorous: if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt, while still allowing for a minimal standard of living, then the debt should not be discharged. *Educ. Credit Mgmt. Corp. v. Jesperson,* 571 F.3d 775, 779 (8th Cir. 2009).

### FINDINGS REGARDING HARRIS' EARNINGS

Harris's first argument is that the bankruptcy court erred in evaluating her past, present, and future earnings and stating that she "'has been employed full-time since graduating college.'" Filing 6 at 4. She contends that she actually presented evidence of interruptions in her employment between

1996 and 2005, and again in 2010. Filing 6 at 4. She argues that she has "ultimately maintained entry level secretarial positions" with UNMC and her income is below the national average, and that "[t]o assume she can or will obtain a job with more income is nothing short of utilizing a crystal ball." Filing 6 at 10. The Court understands Harris to be questioning the bankruptcy court's factual findings, which the Court reviews for clear error. *See Reynolds,* 425 F.3d at 531.

But to begin with, Harris misunderstands what the bankruptcy court found, and its import. What the bankruptcy court actually wrote was that Harris "has been steadily employed since graduating college" and that the bankruptcy court had "no doubt that she will continue to be employed full-time for the foreseeable future." Filing 1-2 at 4. Whether Harris has been "steadily" employed is more of a semantic question than a legal one, and the most important part is whether she can expect to remain employed. Nor did the bankruptcy court base its analysis on any assumption that Harris' income would increase; the bankruptcy court quite clearly acknowledged that Harris "now makes a little more than $38,000.00 per year and expects to receive relatively small annual cost of living increases in future years." Filing 1-2 at 4. The bankruptcy court's reference to that being on the "low end" of what she could expect was simply an expression of the finding that Harris could be expected to continue earning at least that much. *See* filing 1-2 at 4. The bankruptcy court's calculations were based on that assumption, not any speculation about an increase. *See* filing 1-2 at 4-7.

And the bankruptcy court's analysis required it to determine, as best it could, what Harris could be expected to earn. Courts are required to consider the debtor's "reasonably reliable future financial resources." *Jesperson,* 571 F.3d at 779. The bankruptcy court did not employ a "'crystal ball'" to the extent Harris suggests, but to the extent the bankruptcy court did look to the future, those estimations are required by the issues presented. The Court sees no clear error in the bankruptcy court's findings.

## LIVING EXPENSES

Next, Harris takes issue with the bankruptcy court's determinations regarding her expected living expenses. This is, again, a factual issue that the Court reviews for clear error. *See Reynolds,* 425 F.3d at 531.

Primarily, Harris takes issue with the bankruptcy court's finding that some of her expenses were, or are, temporary. The bankruptcy court found that a loan obtained to pay for auto repairs would be paid off in a few months, the support Harris provided to her college-age daughter would no longer be necessary at some point after her daughter graduated or got a job, and

certain other debt payments could be expected to end. Filing 1-2 at 5-6. These temporary expenses added up to $600 per month. Filing 1-2 at 6.

Harris contends that the loan payments seen by the bankruptcy court as "temporary" are actually not, because she relies on that credit "to supplement her negative monthly income." Filing 6 at 11. But this Court does not agree with Harris' reasoning, or her math. Her "negative monthly income" is only negative because of these temporary expenses, and the long-term trend for the foreseeable future is clear, even if Harris continues to run a deficit in the immediate future.

Harris also argues that the bankruptcy court erred in finding that she could be expected to pay $200 to her boyfriend for rent, because, according to Harris, she is to pay "an additional $300/mo to begin as soon as the other obligations expir[e]." Filing 6 at 12. But she does not direct the Court to where, in the record, evidence of that increase can be found. She says that she "testified" to that at trial, but the testimony seems to indicate, at least to the Court, that only $200 would be dedicated to that purpose. *See* filing 4 at 42-43. The first reference the Court can find to an alleged agreement for $500 is in Harris' post-trial brief to the bankruptcy court. *See* bankruptcy court case no. A14-4001 filing 128 at 7. That is not evidence. And the Court cannot find that the bankruptcy court erred by not crediting evidence that was not presented to it.

Harris also contends that the bankruptcy court's assessment leaves her no room for unexpected expenses such as illness or accidents, and that she may incur medical expenses that are "uncontrollable, unpredictable and unavoidable." Filing 6 at 13-14. She also points out that she might incur additional expenses if her relationship with her boyfriend, in whose residence she lives, were to change. Filing 6 at 14. But the court may not engage in speculation when determining reasonable and necessary living expenses. *Jesperson*, 571 F.3d at 780. The sort of potential expenses identified by Harris are, by their nature, impossible to incorporate into an analysis of this kind. Misfortune can strike anyone, and if the mere possibility of calamity was enough to establish undue hardship, then 11 U.S.C. § 523(a)(8) would cease to have any meaning.

The Court finds no clear error in the bankruptcy court's assessment of Harris' living expenses.[2]

---

[2] Harris also takes issue with the bankruptcy court's remark, in the context of evaluating her automotive expenses, that she "should consider whether a newer, more fuel-efficient vehicle would make sense." Filing 1-2 at 5. Harris says it wouldn't. Filing 6 at 15-16. But the bankruptcy court clearly credited Harris for her *current* automotive expenses, without regard to a possible replacement vehicle. *See* filing 1-2 at 5. The Court sees no need to discuss the bankruptcy court's *dicta* in further detail.

### GOOD FAITH ATTEMPT TO REPAY

Next, Harris contends that the bankruptcy court erred in failing to credit her "good faith attempt" to pay her loan. Filing 6 at 16. The Court cannot find any such analysis in the bankruptcy court's order, and with good reason: some appellate courts require a bankruptcy court to consider whether a debtor has made good faith efforts to repay loans, but the Eighth Circuit declined to adopt that standard. *See In re Long*, 322 F.3d 549, 554 (8th Cir. 2003) (collecting cases). The bankruptcy court instead articulated and applied the appropriate standards from Eighth Circuit precedent. It did not err in doing so.

### REPAYMENT PLANS

Under the headings for her third and fourth issues on appeal, Harris makes related arguments regarding the bankruptcy court's reference to the IBR plan and the PSLFP program. She objects that reliance on such plans is unreasonable because the payments made pursuant to those plans are not sufficient to actually reduce the outstanding principal, and that if she makes payments long enough to actually obtain a discharge, there could be serious tax consequences. Filing 6 at 17-23.

The Court is sympathetic to Harris' arguments. There is some merit to the argument that it is a "hardship" to require a debtor who does not appear capable of actually repaying a debt to carry the weight of that increasing debt for decades while making token payments. But Harris' argument that the availability of those plans should not be considered has been squarely rejected by the Eighth Circuit. *See Jesperson*, 571 F.3d at 780-83. And the Court of Appeals also expressly rejected the argument that the possible tax consequences of debt cancellation should weigh into that consideration. *Id.* at 782. In light of that precedent, the Court finds no error on the bankruptcy court's part in considering Harris' eligibility for federal repayment plans.

### CONCLUSION

Having carefully considered Harris' claims, the Court finds no error in the bankruptcy court's findings or reasoning, and affirms its judgment.

IT IS ORDERED:

1. The bankruptcy court's judgment is affirmed.

2. A separate judgment will be entered.

Dated this 31st day of March, 2016.

BY THE COURT:

_____
John M. Gerrard
United States District Judge